PEARSON, Judge.
The defendant-appellant, The Bank of Miami, suffered an adverse verdict in a trial for conversion of a boat. The jury awarded the appellee $1,000 compensatory damages and $2,000 punitive damages. It urges as error the court’s denial of its motion made at the conclusion of the plaintiff-appellee’s case and renewed at the close of all of the evidence for a directed verdict upon the claim for punitive damages.
The parties agree that the controlling law was set forth by the Supreme Court of Florida in Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936):

“ * * * the general rule, and the weight of authority is that in ordinary cases the allowance of exemplary damages applies equally in a suit against a corporation as in a suit against a natural person.” 171 So. at 220.

“Exemplary damages are given solely as a punishment where torts are committed with fraud, actual malice, or deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. Exemplary or punitive damages are therefore damages ultra compensation, and are authorized to be inflicted when the wrong done partakes of a criminal character, though not punishable as an offense against the state, or consists of aggravated misconduct or a lawless act resulting in injury to plaintiff when sought to be redressed by a civil action for the tort.” 171 So. at 221.

The question then is whether the evidence introduced by the appellee meets the requirements for the awarding of punitive damages as set forth in the Winn & Lovett case.
The evidence viewed in the light most favorable to the verdict reveals that on May 25, 1966, the plaintiff-appellee purchased the boat in question from the Bank through Mr. Ashcom, an officer of the Bank, for $350. The appellee made a down payment of $150 to Mr. Ash com at the bank that day. The appellee filled out one of the Bank’s credit applications. At the top of the application are the handwritten words “take over Pmts on acc’t 11185”; the appellee’s name and his wife’s name appear two lines below the foregoing words. *509 Mr. Ashcom executed and delivered on behalf of the Bank to the appellee a bill of sale for the boat. It was not until the day-after the boat was taken that any other agent of the Bank knew that Mr. Ashcom had given the appellee a bill of sale. The appellee and his wife made periodic payments to various collection agents of the Bank. Notations concerning the payments were made on a card bearing the heading “Loan Ledger” and the number “11185”. The name “William E. Hawkins” is typed at the top of the card. The appellee’s name is written on the card. Entries concerning collections show conclusively that agents of the Bank, including Mr. Samuel S. Henry, knew that the appellee was making payments on the boat. Some of the payments were not timely paid. These payments were solicited and collected from the appellee or his wife by agents of the Bank. At a time in January 1967 when the ledger card showed a balance due of $35.80, Mr. Henry agreed to sell the boat to a friend of his, Mr. Clifford Julian, for the $35.80 balance due. On February 2, 1967, Mr. Henry and Mr. Julian took the boat from docking facilities at the appellee’s apartment in the nighttime without notification to the ap-pellee that the Bank intended to take possession. The appellee located the boat in a marina and discovered that it had been left there in the name of the Bank. He then went to the Bank and was told that he had never owned the boat. After some heated conversation, the appellee was told-the name of the boat’s new owner. No one from the Bank offered to return the boat or to return the payments the appellee had made on the boat.
The Bank contends that the foregoing facts do not show actual malice. It urges that it should not be subject to punitive damages because the taking of the boat resulted from a mistake in a bona fide assertion of a supposed right; that the taking was not deliberately violent or malicious but rather an act it would have been authorized to perform had it not been mistaken in its bona fide assertion of a supposed right. See General Finance Corp. of Jacksonville, Inc. v. Sexton, Fla.App. 1963, 155 So.2d 159.
The question whether the taking of the boat by the Bank through its agent without notice to the appellee was such as to partake of a criminal character or constitute aggravated misconduct or such gross negligence as would indicate a wanton disregard for the rights of others was properly submitted to the jury. We think their verdict was proper. Cf. Doral Country Club, Inc. v. Lindgren Plumbing Co., Fla. App.1965, 175 So.2d 570; Lindgren Plumbing Co. v. Doral Country Club, Inc., Fla. App.1967, 196 So.2d 242; Levine v. Knowles, Fla.App. 1967, 197 So.2d 329. The record clearly demonstrates that agents of the Bank, especially Mr. Henry, the agent who seized the boat, knew that the appellee was the owner of the boat. Therefore the taking without notice was not the result of a bona fide mistake. We think it was at best aggravated misconduct within the meaning of the Winn & Lovett case.
Affirmed.