**J. A. and M. M., Individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**G. Thomas RITI, Acting Director Division of Public Welfare of the Department of Institutions and Agencies of the State of New Jersey and Stella Cassi, Director, Bergen County Welfare Board, Defendants.**

Civ. A. No. 1136–73.

United States District Court,
D. New Jersey.
June 17, 1974.

Bergen County Legal Services by Richard S. Semel, Garfield, N. J., for plaintiffs.

William F. Hyland, Atty. Gen. of N. J., by Joan W. Murphy, Deputy Atty. Gen., Trenton, N. J., for defendant Riti.

Edwin C. Eastwood, Jr., No. Bergen, N. J., for defendant Cassi.

WHIPPLE, District Judge:

J. A. and M. M. are recipients of social security benefits in the form of Aid to Families with Dependent Children (AFDC), 42 U.S.C. § 601 et seq. They both have been previously convicted of a criminal fraud practiced on the Bergen County Welfare Board (the Board) by their deliberately misstating their income sources when qualifying for AFDC benefits. Following their convictions, the Board invoked N.J.S.A. 44:7-32 and the administrative procedures thereunder which permit the County Welfare Board, at its discretion, to remove from the AFDC Program any recipients who have been criminally convicted of Welfare fraud.

In a letter opinion of October 29, 1973, this Court preliminarily enjoined the actions of the Board pending an adjudication of the constitutionality of the New Jersey Statute. These plaintiffs now appear before this Court seeking that adjudication pursuant to Fed.R. Civ.P. 56 and the issuance of an injunction pursuant to Fed.R.Civ.P. 65 permanently restraining the enforcement of N.J.S.A. 44:7-32.

The New Jersey Statute provides:

Any person who, by means of a false statement, or false representation, or by impersonation, or other fraudulent device, obtains or attempts to obtain, or aids or abets, any person to obtain funds under this chapter to which he

is not entitled, or a larger amount of assistance than that to which he is justly entitled, or payment of any forfeited installment grant; or knowingly aids or abets in buying, or in any, way disposing of, the property of an applicant without the consent of the county welfare board, shall be guilty of a misdemeanor and punished accordingly. If such person be himself an applicant or recipient of old age assistance, his application may be denied or his grant withdrawn, and future grants denied at the discretion of the board.

It is the last sentence of this Statute that the plaintiffs seek to have declared unconstitutional because it establishes a standard of eligibility inconsistent with the Social Security Act and therefore invalid under the weight of the Supremacy Clause of the United States Constitution.

In this Court's letter opinion of October 29, 1973, it ruled that plaintiffs had demonstrated the potential irreparable harm and ultimate probability of success prerequisite to the issuance of the preliminary injunction. Tully v. Mott Supermarkets, Inc., 337 F.Supp. 834 (D.N.J.1972). As welfare recipients, threatened with the imminent loss of their benefits, they would, by definition, be exposed to immediate and "brutal need" clearly causing them irreparable harm. Goldberg v. Kelly, 397 U.S. 254, 261, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). They also had demonstrated their ultimate probability of success in this cause by alleging the constitutional invalidity of the New Jersey Statute because it conflicted both with the Social Security Act and with the regulations promulgated thereunder viz. 45 C.F.R. § 233.-20(a)(3)(ii)(d). Because this statutory conflict did not raise constitutional issues which required the convocation of a three-judge court, this Court asserted jurisdiction to try the issue sitting as a single district judge. Swift and Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Since that time one of the federal regulations on which

the plaintiffs and this Court expressly relied has been significantly amended and the defendants have raised serious and new issues concerning this Court's jurisdiction. Since any decision of this Court would be a nullity if its jurisdiction has not properly been invoked, I will turn first to the jurisdictional question.

I

In their moving papers, plaintiffs assert that this Court may properly maintain jurisdiction over the cause pursuant to 28 U.S.C. §§ 1331 and 1343. They also allege that the amount in controversy between the parties exceeds $10,000. The defendants, however, now challenge this latter assertion and contend that the amount in dispute between the parties is no more than $74. per month for J. A. and $70. per month for M. M. As a result, the direct monetary impact to each of these plaintiffs falls far under the $10,000. amount in controversy prerequisite to this Court's assertion of jurisdiction pursuant to § 1331. It is also argued by the defendants that all other members of the class which J. A. and M. M. represent likewise fail to meet this $10,000. amount and as a result this Court must decline to exercise its jurisdiction since the claims of all class members must individually rise to this jurisdictional amount before the Court may act. Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

The original jurisdiction of this Court, however, may be invoked without reference to amount in controversy pursuant to 28 U.S.C. § 1343 in any civil action commenced:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States ' . . . .

In the instant complaint, the plaintiffs allege that the New Jersey Statute does

violate rights secured to them by the Constitution of the United States viz. violation of the due process clause of the Fourteenth Amendment and the double jeopardy provision of the Fifth Amendment. Such allegations clothe this Court with the original jurisdiction pursuant to § 1343 to address these issues and also enable it to exercise pendent jurisdiction over the alleged statutory conflict between the New Jersey Statute and the Social Security Act. Hagans v. Lavine, ·415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); California Human Resources Department v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); and United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Although the defendants concede that a district judge may exercise pendent jurisdiction over a federal statutory claim when constitutional issues are·also involved, they argue, however, that such an exercise of pendent jurisdiction can only be properly invoked when the constitutional issues are substantial and must be declined when the constitutional issues are, like those in the instant case, "so attenuated and unsubstantial as to be absolutely devoid of merit." Newburyport Water Co. v. Newburyport, 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904) or "obviously frivolous," Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482 (1910).

■ The test for substantiality was recently reviewed and restated in Hagans v. Lavine, *supra*, 415 U.S. at 536–538, 94 S.Ct. 1372. Within the jurisdictional context, substantiality is a legal term of art which characterizes constitutional claims insubstantial if, ". . . prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial. . . . A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and

leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' " This test is a stringent one and calls for the exercise of federal jurisdiction whenever some colorable doubt concerning the validity of a constitutional claim may be entertained by the Court. Such issues being present in the instant case, I find that the original jurisdiction of this Court has been properly invoked pursuant to 28 U.S.C. § 1343.

■ Normally a finding of such "substantial" constitutional issues in plaintiffs' complaint would then necessitate my convening a three-judge court pursuant to 28 U.S.C. § 2281. Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L. Ed.2d 36 (1973). Under the authority of Swift and Co. v. Wickham, *supra* (1965), I have previously declined to convene the three-judge court because I believe the instant controversy may be resolved on the statutory issue alone without the need of ruling on the validity of plaintiffs' constitutional claims. Such a course of action, I believe, is in accord with established doctrines of judicial restraint and the "recent evolution of three-judge court jurisprudence." Hagans·v. Lavine, *supra*, 415 U.S. at 544, 94 S.Ct. at 1382. For this reason then I conclude that this Court, sitting as a single district judge, may properly exercise pendent jurisdiction over plaintiffs' statutory attack upon N.J.S.A. 44:7–32 and, if necessary, issue the requested permanent restraint.

## II

■ Having established the jurisdictional basis for my cognizance of plaintiffs' cause, I must now rule on the motions for summary judgment and the issuance of a permanent injunction. The defendants contend that the New Jersey Statute is consistent with the Social Security Act and therefore is not unconstitutional.

The defendants reach this conclusion by characterizing the primary purpose of the AFDC Program as directly pro-

viding aid and protection to needy children and only indirectly providing assistance to their parents. In support of their interpretation, the defendants make explicit reference to 42 U.S.C. § 605 and 42 U.S.C. § 602(a)(19) which provide for: (1) the intervention of the State to counsel and guide parents or relatives who receive AFDC benefits so that these payments will be utilized for the best interests of the child and to impose civil or criminal penalties on those parents or relatives who fail to do so (§ 605) and (2) the establishment of work incentive programs and allow the State in calculating the family assistance grant to disregard the needs of any parent or relative, presently receiving such benefits if they refuse without good cause to participate in the program. (§ 602(a)(19)). They contend that § 605 clearly focuses the impact of the AFDC Program upon the child and not upon the parent and that § 602(a)(19) clearly indicates an intent in the Congress to permit exclusion of parents or relatives from the AFDC Program while simultaneously continuing assistance to the child. As a result, they conclude the State statute and regulation which permit the future denial of benefits to an adult or relative convicted of welfare fraud is consistent with the intent of Congress which permits a similar exclusion of adults or relatives under certain circumstances while not affecting benefit payments to the child.

The defendants buttress this statutory argument by referring the Court to a recent change in the regulations promulgated under the Social Security Act on which this Court had earlier relied in reaching its decision in the letter opinion of October 29, 1973. In that opinion, this Court observed that 45 C.F.R. § 233.-20(a)(3)(iii)(d) prohibited the recoupment of previous AFDC overpayments unless the recipient presently had in hand resources, other than the present AFDC benefit payment, from which the previous overpayment could be retrieved. Cooper v. Laupheimer, 316 F.Supp. 264 (E.D.Pa.1970); Bradford v. Juras, 331 F.Supp. 167 (D.Or.1971). This Court further reasoned that if Congress intended that AFDC benefits should not be reduced in the event of previous overpayments then it certainly would not sanction the total cessation of these benefits as permitted and mandated by the New Jersey Statute. On the weight of this statutory argument, this Court issued the preliminary injunction. 45 C. F.R. § 233.20(a)(3)(iii)(d) has since been changed to allow recoupment of previous overpayments from present AFDC benefits. As a result, the statutory argument contra the constitutionality of the New Jersey Statute have been seriously affected. In fact, the defendants now argue that N.J.S.A. 44:7-32 is but a logical extension of the new federal policy sanctioning the reduction of present AFDC benefits in the event of previous overpayments (45 C.F.R. § 233.20(a)(12)) and for this reason it should not be declared unconstitutional but totally consistent with the Social Security Act.

The plaintiffs, however, have ably responded to this recent change in the law. First they argue that 45 C.F.R. § 233.-20(a)(12) is merely a permissive and not a mandatory regulation. It allows States to devise a recoupment program through the vehicle of reducing present AFDC benefits but, like all other features of the States' program in administering AFDC benefits, it is governed by statutory requirements of uniformity 42 U.S.C. § 602(a)(1) and 45 C.F.R. § 205.-120. In the present instance they assert, and the defendants do not deny it, there is no such state-wide program for recoupment in New Jersey other than the statutory scheme described in N.J. S.A. 44:7-32. Assuming state-wide application and enforcement of N.J.S.A. 44:7-32, the plaintiffs argue that it runs afoul the mandate of 42 U.S.C. § 602(a)(1) and 45 C.F.R. § 205.120 because it vests complete discretion in the local county welfare boards and does not

contain mandatory and uniform standards that must be applied by them in determining who will be excluded from the AFDC program because of their criminal conviction for welfare fraud. The statutory scheme does not command exclusion in the event of criminal conviction, it merely allows the County Board to determine for itself in its own discretion whether such exclusion will be ordered in the individual case. Clearly such a scheme does not fulfill the standards of uniformity and state-wide application decreed to be necessary by Congress and, taken alone, casts grave suspicion on the New Jersey Statute's validity.

Coupled to this attack on the schematic application of the New Jersey Statute, the plaintiffs offer a substantive argument as well. The newly promulgated regulation permitting recoupment from present AFDC benefits must be read in its historical context. It must be read in reference to the previous regulation which it has replaced that had prohibited recoupment by means of reduced AFDC benefits. In promulgating the new regulation, however, the Department of Health, Education and Welfare (HEW) was careful to delineate the extent to which such reductions would be allowed:

> (d) If the recoupments are made from current assistance payments, the State shall establish reasonable limits on the proportion of such payments that may be deducted so as not to cause undue hardship on recipients. 45 C.F.R. § 233.20(12)(d)

Although a policy of recoupment by reduction in benefits was approved, the intended effect upon the welfare recipient was expressly designed not to be harsh. The regulation does not permit or sanction total withdrawal of these benefits. It merely permits a portion of the benefit payment to be withheld in a ratio designed not to cause hardship upon the welfare recipient. This is consistent with a continuing federal policy which recognizes that one who qualifies as a welfare recipient is, by definition, an individual confronted with the brutal needs of bare existence. His benefit payment is the only buffer between him and stark and immediate deprivation. As a result, his continuing receipt of full benefits is not a privilege that may be lightly removed and can only be done so when the recoupment of previous overpayments may be had from identifiable resources apart from the present receipt of AFDC benefits or if taken from these benefits, it may only be through a reduction that does not create extreme necessity. As a result, this Court concludes that in the absence of an express Congressional authorization or administrative regulation, the State of New Jersey may not enforce N.J.S.A. 44:7–32 against AFDC recipients, be they children or adults. All that has been authorized either by HEW or Congress is the reduction of present benefits pursuant to a state-wide program. No authority whatsoever has been cited by the defendants to sanction the policy of total exclusion through termination. In the absence of such authority no State may exclude otherwise eligible individuals from federal relief programs. Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

The defendants' argument that this reduction in benefits is not directed toward the child protected by the AFDC program but merely against the wrongdoing parent or relative and therefore not inconsistent with the Eligibility Requirements of the Social Security Act does not correspond with the express purposes of the AFDC Program as described in 42 U.S.C. § 601. The AFDC Program was enacted:

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as

practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, . . .

Congress primarily sought a cohesive family unit in enacting the AFDC Program and thus the parent or relative as well as the child is a primary object of the Program's benefits. Woods v. Miller, 318 F.Supp. 510 (W.D.Pa.1970). For the defendants to say that the parent or relative is only indirectly or incidentally the object of such assistance does not comport with this express Congressional declaration cited above.

As a result, I find myself constrained to rule summary judgment in plaintiffs' favor and issue an injunction permanently restraining the enforcement of the offending portion of N.J.S.A. 44:7–32. (It is only the last sentence of N.J.S.A. 44:7–32 that permits the exclusion complained of here and thus only the enforcement of that provision is permanently restrained.)

The State of New Jersey is free; in fact, federally encouraged to seek recoupment of previous overpayments, either fraudulently or non-fraudulently induced from current assistance payments pursuant to a plan in accordance with 45 C.F.R. § 233.20(12) and 45 C.F.R. § 205.120. It is permanently enjoined, however, from penalizing, otherwise eligible AFDC recipients by excluding them from the AFDC Program because of their conviction for welfare fraud unless and until such an exclusionary remedy is authorized by Congress and HEW.

The plaintiffs are directed to submit an appropriate order.