Charles BLOUNT, James Leonard, and Roland Riley, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Paul J. SMITH, Secretary of the Department of Labor and Industry, John M. Clark, Executive Director of the Bureau of Employment Security, Gerald M. Pittaway, Manager of Employment Security, Robert B. Ryan, Manager of the York Office of Bureau of Employment Security, Defendants.

Civ. A. No. 75–750.

United States District Court,
M. D. Pennsylvania.

Nov. 4, 1977.

Marion E. Frankston, Stephen R. Krone, Harrisburg, Pa., Alan N. Linder, Lancaster, Pa., for plaintiffs.

Kathleen Herzog Larkin, Edward A. Miller, Deputy Attys. Gen., J. Justin Blewitt, Jr., Deputy Atty. Gen., Chief, Civ. Litigation, Robert P. Kane, Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

Plaintiffs were convicted, in state summary proceedings, of fraudulently receiving unemployment compensation benefits. As a result of these convictions, Plaintiffs, although otherwise qualified, were declared ineligible to receive benefits for a period of one year pursuant to Section 402(g) of the Pennsylvania Unemployment Compensation Act, 43 P.S. § 802(g). This action challenges the validity of § 402(g) on constitutional and statutory grounds. Both Plaintiffs and Defendants seek summary judgment. Although we decide the constitutional questions adversely to Plaintiffs, they are nonetheless substantial as defined by *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577, and thus confer jurisdiction to determine the pendent state and federal statutory claims.

Plaintiffs originally sought to enjoin enforcement of § 402(g), but, as the one-year ineligibility period has now expired as to all Plaintiffs, they now seek only declaratory relief and recovery of benefits alleged to have been wrongfully withheld.[1]

## FEDERAL STATUTORY CLAIMS

■ The first basis upon which Plaintiffs attack § 402(g) is that it is inconsistent with the Federal Social Security Act, 42 U.S.C. § 501, et seq., and thus void under the Supremacy Clause of the United States Constitution, Art. VI, Clause 2.

Specifically, Plaintiffs contend that the one-year disqualification provision of the Pennsylvania Act conflicts with the requirement of § 303 of the Federal Act, 42 U.S.C. § 503(a), that state statutory schemes provide for prompt payment of benefits:

"The Secretary of Labor shall make no certification for payment[2] to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

(1) Such methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due; . . . ."

Plaintiffs argue that when they initially established eligibility payment of benefits became "due", and that their subsequent disqualification pursuant to § 402(g) denied them benefits that were "due" contrary to § 303(a) of the Federal Act. This argument is fallacious in that it presupposes the outcome of the very inquiry that is now before the Court. If § 402(g) were invalid, as Plaintiffs assume, then benefits would indeed be "due" and § 303 of the Federal Act would require the state to provide prompt payment. *Fusari v. Steinberg,* 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975); *California Dept. of Human Resources v. Java,* 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971). On the other hand, if § 402(g) is valid, which for reasons set forth in the remainder of this opinion we conclude it is, then no payments were ever "due" Plaintiffs and the question of payment "when due" does not arise.

■ Section 303(a) of the Federal Act is no more than a requirement that the state provide prompt payment of benefits to those who are eligible. It does not limit the power of the states to suspend or terminate eligibility for proper reasons, and it provides no basis for voiding an otherwise proper eligibility standard such as § 402(g) merely because it operates to deny compensation to some claimants to whom it would otherwise be due.

The second prong of Plaintiffs' statutory argument is that § 402(g) is contrary to the general policy of the Federal Social Security Act to maintain those who are unemployed through no fault of their own at subsistence levels without their having to resort to public assistance. See *California Dept. of Human Resources v. Java, supra,* 402 U.S. at 131, 91 S.Ct. at 1353, 28 L.Ed.2d at 674. Since Plaintiffs have been forced to resort to public assistance during their ineligibility, they contend that the purpose of the Federal Act has been improperly frustrated. The weakness of this argument is that the disqualification of which Plaintiffs complain is specifically authorized by the Unemployment Tax Act, 26 U.S.C. § 3304(a)(10):

1. Although this action was filed prior to repeal of the statute requiring a three-judge court in cases seeking to enjoin enforcement of a state statute, Pub.L. 94–381, § 1, August 12, 1976, 90 Stat. 1119, we are not required to convene a three-judge court, as the prayer for injunctive relief has been withdrawn. See *Gilhool v. Chairman and Commissioners, Phila. Co. Bd. of Elections,* 306 F.Supp. 1202 (E.D. of Pa. 1969), aff'd, 397 U.S. 147, 90 S.Ct. 996, 25 L.Ed.2d 182 (1970).

2. The payments referred to in this section are provided for in 42 U.S.C. § 502 for the purpose of assisting the states in the administration of their Unemployment Compensation laws. Such payments are to be made from the U.S. Treasury upon certification by the Secretary of Labor. Section 503, quoted in part above, limits the authority of the Secretary of Labor to certify payments under § 502 by prescribing certain provisions which a state must include in its Unemployment Compensation Law in order to be eligible for payments.

"Compensation shall not be denied to any individual by reason of cancellation of wage credits or total reduction of his benefit rights for any cause other than misconduct connected with his work, fraud in connection with a claim for compensation, or receipt of disqualifying income." [3]

The Unemployment Tax Act, 26 U.S.C. §§ 3301–3309, and the Unemployment Compensation provisions of the Social Security Act, 42 U.S.C. §§ 501–504 both originated in the Act of August 14, 1935, 49 Stat. 620 et seq. See Historical Note to 26 U.S.C.A. § 3301 (1967). Together the two statutes form an integrated statutory scheme, and, although they are codified in different titles, they are so intimately connected that we do not see how a state enactment specifically authorized by the Unemployment Tax Act could be inconsistent with the Social Security Act.[4]

## EQUAL PROTECTION

██ The Pennsylvania Bureau of Employment Security (BES) does not institute criminal proceedings against every claimant found to have received fault overpayments. Only the most serious violators are prosecuted, and thus only the most serious violators are subject to suspension of benefit rights under § 402(g). Stipulation of Facts, ¶¶ 31–48. Plaintiffs suggest that this policy of selective prosecution lends itself to discriminatory application, in violation of the constitutional guaranty of equal protection of the law. It is obvious that any

statute can be discriminatorily applied, but this possibility alone does not violate the Equal Protection Clause. To prevail on their equal protection claim Plaintiffs would have to show not only that they were prosecuted while others were not, but also that the selection was made on the basis of race, religion or some other arbitrary classification. *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *United States v. Bennet*, 539 F.2d 45 (10th Cir. 1976); *United States v. Berrigan*, 482 F.2d 171 (3rd Cir. 1973). The BES Manual of Operations and Procedures provides extensive nondiscriminatory criteria to guide agency determinations as to which violations warrant prosecution. Stipulation, ¶ 31 and Exhibit D thereto. Nowhere in the record before us is there any suggestion that the decision to prosecute Plaintiffs was made on any basis other than the criteria set forth in the manual.

## DUE PROCESS

██ Plaintiffs claim that § 402(g) denies them substantive due process in that the one-year disqualification imposed thereunder is not rationally related to the purposes of the Social Security Act and the Pennsylvania Unemployment Law. Since the stated policy of both acts is to provide benefits to unemployed workers, and § 402(g) operates to deny benefits to some workers who would otherwise be eligible, Plaintiffs conclude that § 402(g) bears no rational relation to the legislative scheme, and is therefore unconstitutional. This argument is

---

3. Although the quoted section of the Unemployment Tax Act speaks in terms of "cancellation of wage credits" and "total reduction of benefit rights", while the Pennsylvania provision is denominated an ineligibility, we can perceive no significant distinction between these terms, the result of any of them being that the claimant is denied compensation. The terms "cancellation of wage credits" and "total reduction of benefit rights" merely identify the technical form such denial may take under various state systems.

4. This specific federal authorization for the challenged state statute distinguishes this case from *J.A. v. Riti,* 377 F.Supp. 1046 (D.N.J. 1974), relied on by Plaintiffs. At issue in that case was a New Jersey statute which authoriz-

ed denial benefits under the Aid to Families with Dependent Children program to those convicted of welfare fraud. Since denial of benefits under the state statute would subject those affected to the very "stark and immediate deprivation" that it is the purpose of the Social Security Act to prevent, the court concluded that the state statute could not be enforced *in the absence of express Congressional Authorization.* 377 F.Supp. at 1051. As no such authorization appeared in the federal law, the state statute was struck down. In the instant case the Unemployment Compensation statute in question is specifically authorized by federal law, and thus the analysis applied to the welfare statute in *J.A. v. Riti* is inapplicable.

similar to Plaintiff's statutory argument discussed above, and is equally without merit.

That the general purpose of the legislation is to provide benefits to those in need does not mean that any provision which limits the class of those eligible to receive benefits is arbitrary or irrational. Indeed, it is only through prevention of payments to those who are ineligible that the Unemployment Compensation Fund retains sufficient resources to provide adequately for those the act is designed to help.

▇▇▇ In the administration of social welfare programs such as the Unemployment Compensation law the state has broad discretion, the only requirement being that the program be managed in a manner that is rational and nondiscriminatory. *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Moreover, a plaintiff seeking to invalidate a state statute on due process grounds has the burden of demonstrating the lack of a rational connection between the challenged provision and some legitimate state purpose. *Kelly v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976).

Plaintiffs have stated several reasons why they consider § 402(g) to be a less than perfect deterrent to fraudulent claims.[5] These arguments, however, miss the point. The constitutional inquiry before us is not whether a more effective measure might be devised, but whether the measure in question promotes the asserted state interest in any degree whatever. So long as § 402(g) is not wholly arbitrary and does not exclude anyone from benefits on the basis of some impermissible classification such as race or religion, the Court may not disturb it. *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Dandridge v. Williams, supra.*

Deterring false claims against the Unemployment Compensation Fund is a legitimate, indeed crucial, concern of the state, and doing so through temporary denial of benefits to those who are caught defrauding the fund is not so unreasonable as to amount to a deprivation of due process.

Plaintiffs additionally contend that § 402(g) violates the due process clause because it creates an irrebuttable presumption of unwillingness to comply with the provisions of the Act. This contention simply finds no support in the Act. The one-year disqualification is imposed as a penalty for past misconduct, not from a presumption of unwillingness to comply in the future. When the one-year period of ineligibility is over claimants can again establish eligibility under the criteria of the Act free from any unfavorable presumptions. Thus this case is entirely distinguishable from *Garcia v. Silverman*, 393 F.Supp. 590 (E.D. Wis.1975), relied on by Plaintiffs.

▇▇▇ Plaintiffs' third and final due process argument is that they were not given adequate notice that their guilty plea to summary criminal charges would result in a year's disqualification for benefits. This argument does not go to the validity of § 402(g), but merely to the fairness of the state criminal proceedings. Certainly a guilty plea entered without knowledge of its consequences can amount to a denial of due process, *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *Paige v. United States*, 443 F.2d 781 (4th Cir. 1971). However, this is not a claim that should be first raised in this Court. If Plaintiffs believe that the state summary proceedings were constitutionally defective they should attempt to correct such defect through the state judicial system, or demonstrate to this Court that no state procedure is available. *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d

---

5. For example, the great majority of those who wrongfully receive overpayments are never prosecuted, and thus are not affected by § 402(g). Others, although prosecuted and convicted, find employment during their one year of ineligibility, and thus suffer no deprivation as a result of § 402(g).

482 (1975); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Plaintiffs have done neither, and thus we will not consider this claim.[6]

## EIGHTH AMENDMENT

■ Plaintiffs characterize the one-year disqualification imposed under § 402(g) as disproportionate to the offense and thus violative of the Eighth Amendment's prohibition of excessive fines. Assuming, without deciding, that the ineligibility is penal in nature and subject to the Eighth Amendment, we do not find it so excessive as to amount to a constitutional violation.

The crime of which Plaintiffs have been convicted, if not for the specific penalty provisions of the Unemployment Compensation Act, would be punishable under the Criminal Code as theft by deception. 18 C.P.S.A. § 3922; *Commonwealth v. Buzak*, 197 Pa.Super. 514, 179 A.2d 248 (1962). The amounts which Plaintiffs are alleged to have fraudulently received would constitute a misdemeanor of the first degree, for which a maximum penalty of five-years imprisonment and a fine of ten thousand dollars could be imposed. 18 C.P.S.A. §§ 1101(3), 1104(1), 3903(b). The penalty provided under the "Penalty Provisions" article of the Unemployment Compensation Act, 43 P.S. § 871(a) (thirty-days imprisonment and a fine of two hundred dollars), is remarkably light compared to that in the general penal statute. It is reasonable to assume that this relative lack of severity is a result of the legislature's awareness that those convicted of fraud under 43 P.S. § 871(a) would also be subject to the more serious deprivation of a year's eligibility under § 402(g). Had Plaintiffs been subjected to the maximum penalty allowable under 43 P.S. § 871 as well as the ineligibility they have suffered, their total "fine" would still be substantially less than that to which they might have been subjected had they fraudulently gotten money from a source other than the Unemployment Compensation Fund.

**6.** Even if Plaintiffs were to prevail on this claim, it would not necessarily entitle them to receive the benefits they have been denied, but would merely entitle them to withdraw their

Section 402(g) is also claimed to violate the Eighth Amendment in that it applies automatically to all those who are convicted, without regard to the circumstances of the offense or the personal characteristics of the offender. In support of this proposition Plaintiffs cite *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed. 944 (1976), wherein the Supreme Court invalidated a state statute which imposed a mandatory death penalty on everyone convicted of first degree murder. The Court in *Woodson* was concerned with the harshness of imposing the "unique and irreversible penalty of death" without regard to individual circumstances, and the decision is specifically so limited. The Court did not suggest that mandatory penalties (or civil disqualifications such as that involved here) for minor offenses are unconstitutional.

■ Plaintiffs also suggest that Pennsylvania Law prohibits the imposition of mandatory penalties, a proposition for which there is no authority. *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976), cited by Plaintiffs, is inapposite, dealing with a sentencing judge's failure to exercise of legislatively mandated discretion, and not with the legislature's power to establish nondiscretionary penalties.

## PENDENT STATE CLAIMS

■ Plaintiffs also attack § 402(g) on two state statutory grounds, both of which we find totally without merit. The first of these is that § 402(g) violates the policy of the Unemployment Compensation Act, set forth at 43 P.S. § 752:

"... Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages to employees during periods when they become unemployed through no fault of their

pleas of guilty to the summary criminal charges and enter a defense. See *Paige v. United States*, 443 F.2d 781 (4th Cir. 1971).

own. The principle of accumulation of financial reserves, the sharing of risks, and the payment of compensation, with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Plaintiffs contend that since the legislature has declared a policy of providing compensation to those who become unemployed through no fault of their own, and § 402(g) denies compensation to Plaintiffs despite the fact that they have become unemployed through no fault of their own, § 402(g) is invalid. In essence, Plaintiffs are asking the Court to hold that once the legislature has announced a general policy that Unemployment Compensation be made available, it has no further power to enact standards defining and limiting the class of persons eligible to receive benefits. The legislature clearly has the power to enact eligibility standards, and the Unemployment Compensation system would be unworkable without such standards. The fact that under the standards so enacted some people are eligible for benefits while others are not does not amount to an irreconcilable conflict with the policy of the Act.[7]

■ Secondly, Plaintiffs contend that § 402(g) is invalid because it imposes a penalty, but is not included in the Article VIII of the Act, entitled "Penalty Provisions", 43 P.S. § 871 et seq. We agree with Plaintiffs that § 402(g) is at least partially penal in nature and might more logically

have been included in the same article with the other penal provisions of the Act. However, there are also persuasive reasons, cited at Part VI of Defendants' reply brief, why § 402(g) is characterized as an ineligibility for compensation and placed in Article IV of the Act, entitled "Compensation", 43 P.S. § 801 et seq. Plaintiffs have cited no authority, nor can we find any, which would compel us to invalidate an otherwise proper statutory provision merely because the internal organization of the Act of which it is a part is less than ideal. In fact, the Pennsylvania Rules of Construction, 1 Pa.C.S. § 1924, dictate the contrary conclusion: "The Headings prefixed to titles, parts, articles, chapters, sections, and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof."

■ Finally, Plaintiffs suggest that § 402(g) violates Article III, § 3 of the Pennsylvania Constitution[8] in that the title of the Act which added this section to the Unemployment Law did not adequately indicate that a new penalty was being added. The full title of the Act which added this provision to the law was as follows:

"An Act to further amend the Act, approved the fifth day of December, one thousand nine hundred thirty-six (1937 Pamphlet Laws 2897), entitled 'An Act establishing a system of unemployment compensation to be administered by the Department of Labor and Industry and its existing and newly created agencies with personnel (with certain exceptions) selected on a civil service basis; requiring employers to keep records and make reports, and certain employers to pay contributions based on payrolls to provide moneys for the payment of compensation to certain unemployed persons; providing procedure and administrative details for the determination, payment and collec-

---

7. Even if the specific provision of § 402(g) were in irreconcilable conflict with the general policy statement of the Act, Pennsylvania's Rules of Construction dictate that the specific provision should prevail. 1 Pa.C.S. § 101.

8. Article III, § 3. *Form of Bills*

No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

tion of such contributions and payment of such compensation; providing for cooperation with the Federal Government and its agencies; creating certain special funds in the custody of the State Treasurer; and prescribing penalties' eliminating certain obsolete provisions thereof, clarifying certain definitions and terms, changing the rights and obligations of employers and employees thereunder, and requiring prothonotaries to enter certain laws without prepayment of costs." Act No. 530, 1949.

The cases which have interpreted Article III, § 3 of the Pennsylvania Constitution have held that it does not require the title of an act to be a complete synopsis of its contents. So long as the title indicates the general subject matter of the act so as to put legislators and the public on notice of its contents, it is sufficient. *McSorley v. Fitzgerald*, 359 Pa. 264, 59 A.2d 142 (1948); *Bensalem Township School District v. Bucks County Commissioners*, 8 Pa.Cmwlth. 411, 303 A.2d 258 (1973).

The title quoted above clearly indicates that the Act in question substantially amends a prior Act, which included in its title a specific reference to penalty provisions. This should put any reader of normal intelligence on notice that any provision of the prior Act, including the penalties, may be significantly altered by the amending Act. This is all that is necessary to fulfill the requirement of Article III, § 3, of the Pennsylvania Constitution.

As we have concluded that denial of benefits to Plaintiffs pursuant to § 402(g) was proper, we need not reach the question of whether the Eleventh Amendment would bar the award of retroactive benefits.

Plaintiffs' motion for summary judgment will be denied, and Defendants' motion for summary judgment will be granted.

An appropriate order will be entered.