## Tcheou v. Weimer

*J. Stephen Feinour*, for plaintiffs.
*G. Thomas Miller* and *E. E. Knauss, III*, for defendants.

CALDWELL, *J.*, January 18, 1980—All defendants in this action have filed motions for partial summary judgment against plaintiffs, who seek compensatory and punitive damages for injuries suffered in an automobile accident. Defendants contend that the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, sec. 101 et seq., 40 P.S. §1009.101 et seq., has eliminated the claims made by plaintiffs for punitive damages.

Plaintiffs' complaint alleges that on or about September 23, 1977, defendant Bogart, the owner of The Lighthouse Inn, through her agent, served defendant Weimer a number of alcoholic beverages until he became visibly intoxicated, and continued to serve him despite his loss of sobriety. Weimer then proceeded to The New Cracker Barrel, Inc.

and was served a number of drinks there as well, although his intoxicated condition was obvious. Thereafter, he left The New Cracker Barrel in a car borrowed from defendant Horting and proceeded along Route 22 in the wrong lanes of traffic, going west in the eastbound lanes. He collided head-on with an automobile driven by Man Tao Tcheou. His wife, Ninh Thi Tran, and their son, Saraman Tcheou, were passengers in the car. Plaintiffs were severely injured in the accident and their son was killed.

Both Man Tao Tcheou and Ninh Thi Tran claim damages for severe and permanent injuries to themselves and base their tort claims upon section 301(a)(5)(B), 40 P.S. §1009.301(a)(5)(B), of the No-fault Act. Pursuant to section 301(a)(4), they also claim damages for the wrongful death of their son not compensated for by section 202(d) of the act. In all counts of the complaint plaintiffs claim punitive damages for the individual conduct of each of the defendants, which they allege was done in a wanton, reckless and outrageous manner.

The No-fault Act has abolished common-law tort liability in certain instances, but it still retains the injured party's traditional tort remedy for certain exceptions provided for in section 301(a) of the act. Thus, the act is not purely "no-fault." Rather, it may be more accurately characterized as dividing automobile accident victims into two groups: (1) those who, in the legislature's judgment, have suffered only minor injuries as defined in the act and who are able to recover promptly and efficiently from their own insurance company without a showing of fault; and, (2) those who have suffered major injuries which entitle them to sue the tortfeasor and recover those damages permitted by

the act. See Singer v. Sheppard, 464 Pa. 387, 346 A. 2d 897 (1975). We must, therefore, carefully examine the statutory language to determine the particular damages plaintiffs may claim from a tortfeasor.

Section 301(a), 40 P.S. §1009.301(a), abolishes tort liability for injuries arising out of the maintenance or use of an automobile in this state unless (among other exceptions not pertinent to the case at bar[1]) "the accident results in: the reasonable value of reasonable and necessary medical . . . services, including . . . necessary ambulance, hospital and professional nursing expenses . . . in excess of seven hundred fifty dollars ($750)." 40 P.S. §1009.301(a)(5)(B). Under this exception the tortfeasor remains liable for damages for "noneconomic detriment."[2] Noneconomic detriment is defined as follows: "pain, suffering, inconvenience, physical impairment, and other nonpecuniary damage recoverable under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle. The term does not include punitive or exemplary damages." 40 P.S. §1009.103.

---

1. Tort liability is also retained when: (1) the tortfeasor's car was not insured; (2) the injury is caused by a defect arising from the design, manufacture, repair or service of the car; (3) the injury is intentional. Id.

2. A person also remains liable for noneconomic detriment when the accident results in: (1) death or serious and permanent injury, (2) physical and mental impairments that prevent a person from substantially performing customary, daily acts for more than 60 days and (3) certain cosmetic disfigurements: 40 P.S. §1009.301(a)(5).

Defendants contend that because this definition expressly excludes punitive damages, plaintiffs are foreclosed from claiming them under the act. We believe, however, that this definition, in part, expresses the legislature's intent to maintain the prior public policy of this Commonwealth concerning the personal liability of a tortfeasor for punitive damages.[3] Section 104(a) of the act provides, in pertinent part:

"(a) Security covering a motor vehicle.—Every owner of a motor vehicle . . . shall continuously provide security covering such motor vehicle . . . Security shall be provided for the payment of basic loss benefits, and for the payment of sums . . . which the owner or any person operating the vehicle with the express or implied permission of the owner may become liable to pay as damages . . . The owner or any other person may provide security covering a motor vehicle by a contract of insurance with an insurer or by qualifying as a self-insurer or as an obligated government." 40 P.S. §1009.104(a).

This section provides that an owner must be insured for basic loss benefits and for any damages he may be liable to pay. Since section 301(a)(5)(B) provides that an individual under certain circumstances remains liable for noneconomic detriment defined as "pain, suffering . . . and other non-pecuniary damage . . .," there existed the possibility that punitive damages would fall within the term "nonpecuniary damage" and section 301 would be construed to allow the recovery of punitive damages from a tortfeasor's insurance com-

---

3. An individual tortfeasor remains personally liable for punitive damages and he cannot shift this burden to his insurance company: Esmond v. Liscio, 209 Pa. Superior Ct. 200, 224 A. 2d 793 (1966).

pany. We believe that to preclude this occurrence, the last sentence of the definition expressly excluded punitive damages from the meaning of noneconomic detriment. Under this interpretation the prior public policy of the Commonwealth was preserved by not allowing the recovery of punitive damages from a tortfeasor's insurance company based upon the individual's liability under the act for noneconomic detriment, a liability which must be insured against under section 104(a).

Defendants refer to the Uniform Motor Vehicle Accident Reparations Act [reprinted in D. S. Shrager, Editor, The Pennsylvania No-fault Motor Vehicle Insurance Act, App.D] as further support for their contention that punitive damages are recoverable under the No-fault Act only for purposely inflicted harm since the Pennsylvania Act is very similar to the uniform one. While we agree that appropriate sections of the Uniform Act and the comments thereto may be looked to for guidance in determining the meaning of sections in Pennsylvania's No-fault Act, we must also recognize that the General Assembly, if it modeled the act after the Uniform Act, could certainly modify the latter one to be consistent with specific public policies of the Commonwealth. Thus, it may be instructive to observe where the Pennsylvania Act differs from the Uniform Act as well as where it is substantially similar.

In this regard, we find a significant difference between subsection (b) of section 5 of the Uniform Act and the same subsection of section 301 of the No-fault Act. Both sections use similar language to partially abolish tort liability for injuries arising from automobile accidents. Subsection (b) of the Uniform Act provides in pertinent part, as follows: "For purposes of this Section . . . a person does not

intentionally cause harm merely because his act or failure to act is intentional or done with his realization that it created a grave risk of harm." Uniform Motor Vehicle Reparations Act §5(b) (1972 version).

The purpose of this subsection is to eliminate the possibility that intentionally caused harm would be construed to include reckless or negligent conduct or conduct that created a grave risk of serious harm:[4] Uniform Motor Vehicle Accident Reparations Act §5(b), Comment (1972 version). On the other hand, subsection (b) of section 301 of the No-fault Act provides as follows:

"(b) Nonreimbursable tort fine.—Nothing in this section shall be construed to immunize an individual from liability to pay a fine on the basis of fault in any proceeding based upon any act or omission arising out of the maintenance or use of a motor vehicle: Provided, That such fine may not be paid or reimbursed by an insurer or other restoration obligor." 40 P.S. §1009.301(b).

Had the General Assembly, using the Uniform Act as a model, intended that punitive damages were to be recoverable only for intentionally caused harm, it is highly unlikely that it would have substituted for the clear language of subsection (b) of the Uniform Act its own subsection which attempts, in admittedly ambiguous terms, to retain some aspect of liability that existed prior to the passage of the

---

4. The Uniform Act, like the Pennsylvania Act, retains tort liability for intentionally caused harm; intentional in the sense that the consequences of the act were intended, not just that the act itself was volitional. See Uniform Motor Vehicle Accident Reparations Act §§5(a)(3), 5(b) (1972 version).

No-fault Act. We believe that section 301(b) of the Pennsylvania Act indicates the legislature's disagreement with the position of the National Conference of Commissioners on Uniform State Laws that punitive damages should only be recoverable for purposely inflicted harm. To the extent that the General Assembly was guided by the Uniform Act, we conclude that section 301(b), in conjunction with the statutory definition of noneconomic detriment, is an attempt to mold that Act to specific public policies of the Commonwealth, to wit: the policy that punitive damages may be imposed on a tortfeasor who acts in a reckless and wanton manner as well as intentionally, see Focht v. Rabada, 217 Pa. Superior Ct. 35, 268 A. 2d 157 (1970), and the policy that a tortfeasor remains personally liable for punitive damages and cannot shift repsonsibility for payment to his insurer: Esmond v. Liscio, supra, fn. 3.

We reject defendants' contention that the word "fine" in subsection (b) of section 301 refers only to fines imposed under the criminal law. The No-fault Act, as evidenced by section 102, 40 P.S. §1009.102, was enacted to radically alter the tort system of compensating certain victims of automobile accidents and section 301 deals substantively with the abolition of tort liability. Additionally, subsection (b) is contained in section 301 which is entitled "tort liability." That section in turn is the first section of Article III, identically entitled "Tort Liability." Further, the heading to subsection (b) uses the phrase "nonreimbursable tort fine." Since headings prefixed to articles, sections and other divisions of a statute may be used to aid in the construction of that statute, Statutory Construction Act of December 6, 1972, P.L. 1339,

sec. 3, 1 Pa.C.S.A. §1924, we believe the better interpretation of subsection (b), after considering the purpose and substance of the act as well as the relevant headings, is that the subsection refers to an element of *tort* liability (i.e., punitive damages) that the General Assembly wishes to preserve, despite its general abolition of compensatory tort liability.

This interpretation is made clearer if we accept for a moment defendants' position that the word "fine" in subsection (b) refers solely to fines imposed by the motor vehicle code. The subsection would then exist to guard against the possibility that the partial abolition of *tort* liability in subsection (a) would be construed to excuse an individual from paying a traffic fine. In our judgment this is not a reasonable view of the legislation and we think the better interpretation of subsection (b) takes into account its context and prevents exactly what defendants are attempting to do in the instant case: i.e., argue that the No-fault Act eliminates punitive damages, traditionally allowed in tort actions, because of its partial abolition of compensatory tort liability except for certain exceptions. Subsection (b), a very broad retention of liability "to pay *a* fine . . . in *any* proceeding" provided that the fine may not be paid or reimbursed by an insurer, is simply a continuation of the prior public policy of the Commonwealth that a tortfeasor is personally liable for punitive damages imposed for wanton and reckless conduct.

Admittedly, this position is not entirely free from doubt because of the uncertain meaning of the phrase "tort fine." It is not defined in the act and, apparently, has never been used to refer to punitive

damages prior to the passage of the No-fault Act.[5] The uncertainty of the term, however, lies only in its novelty and not in its appropriateness as a description of punitive damages. Punitive damages are penal in nature. They are imposed not to compensate plaintiff but to punish defendant and to deter him and others from similar outrageous conduct in the future: Esmond v. Liscio, supra, and cases cited therein; Thomas v. American Cystoscope Makers, Inc., 414 F. Supp. 255 (E.D. Pa. 1976). They fulfill the goals of the criminal law by recovery of damages through private tort actions. See Davis v. Schuchat, 510 F. 2d 731 (D.C. Cir. 1975); Bank of Miami v. Tambourine, 218 So. 2d 507 (Fla. Dist. Ct. App. 1969). As such, they are "tort fines."

Huff v. White Motor Corp., Nos. 78-2540 and 78-2541 (U.S. 7th Cir. Oct. 9, 1979), cited by defendants in support of their position on the constitutional issue in this case,[6] uses a similar description of punitive damages. In Huff the court stated that punitive damages "are not compensation for injury. Instead, they are *private fines* levied by civil juries to punish reprehensible conduct and to deter its future occurrence." Id. at ＿＿ (emphasis

---

5. In the past punitive damages have been referred to as "exemplary" damages, "punitive" damages, "vindictive" damages, "imaginary" damages and smart money, Black's Law Dictionary 467-468 (rev. 4th ed. 1968), but never as a "tort fine."

6. An issue we do not reach because of our disposition of the motion on the statutory construction question.

supplied), quoting International Brotherhood of Electrical Workers v. Foust, ＿＿ U.S. ＿＿, ＿＿, 99 S.Ct. 2121, 2125 (1979), and Gertz v. Robert Welch, Inc., 418 U.S. 323, 350, 94 S.Ct. 2997, 3012 (1974). See also Maheu v. Hughes Tool Co., 384 F.Supp. 166 (C.D. Cal. 1974). It is our conclusion that the words "tort fine" are synonymous with punitive damages.

Defendants cite Teagle v. Hart, 1 P.C.R. 310 (1978), and Reimer v. Delisio, 92 York 79 (1978), which have held that plaintiffs may not claim punitive damages in actions instituted under the No-fault Act. We respectfully disagree with the reasoning of these cases. The court in Teagle did not discuss the effect subsection (b) had upon the partial abolition of tort liability under subsection (a) of section 301, nor did it discuss in detail the basic policies of the act or public policies adversely and unnecessarily abrogated by its holding. In Reimer, while the court purported to read the section in context, it actually focused solely upon the wording of subsection (b), without any reference to the purpose of the No-fault Act or to the purpose of section 301(a). As indicated in our discussion, we do not concur in the Reimer court's conclusion that subsection (b) refers solely to fines imposed under the Vehicle Code. Additionally, we cannot concur in the finding that "in the context of the entire section this confusing title [Nonreimbursable tort fine] . . . does not preserve liability initially abolished." 92 York at 81. Granted, the section is slightly disorganized and subsection (b) could perhaps have been more properly included under subsection (a). We cannot refuse, however, to enforce a proper statutory provision simply because the internal or-

ganization of the section is less than ideal.[7] See Blount v. Smith, 440 F. Supp. 528 (M.D. Pa. 1977).

In conclusion, although we note that the legislature's choice of language was certainly not designed to shed the brightest light on its purpose in enacting section 301(b), we believe that our interpretation, consistent with the purpose of the No-fault Act and prior public policies of the Commonwealth, is the most reasonable one to maintain. "[S]tatutes are not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions." Com. v. Miller, 469 Pa. 24, 27-28, 364 A. 2d 886, 887 (1976); Tchimayan v. Toscano, 4 D. & C. 3d 534 (1977). Additionally, when the words of a statute are not explicit, courts may consider, among other things: the occasion and necessity for the statute, the mischief to be remedied, the former law upon the same or similar subject and the consequences of a particular interpretation: Statutory Construction Act of December 6, 1972, P.L. 1339, sec. 3, 1 Pa.C.S.A. §1921. We believe our interpretation takes all of these factors into account because it does not impair the goals of the No-fault Act while at the same time it preserves prior public policies. Thus, punitive damages may still be imposed for all injuries inflicted by a tortfeasor's wanton, reckless or inten-

---

7. For example, the organization of the section allows an individual to sue for punitive damages for an injury suffered in an automobile accident without having to meet the conditions of subsection (a)(5) of section 301. If a claim cannot meet the damage requirements of this subsection, however, it is probably minor and would not result in a claim for punitive damages.

tional conduct. When the injuries arise from the use of a motor vehicle, however, punitive damages may not be recovered from the tortfeasor's insurance company under the guise of noneconomic detriment. The purpose of the No-fault Act in providing prompt, economical coverage for automobile accident victims, see 40 P.S. §1009.102(b), is, therefore, effectuated at the same time the public policy that tortfeasors remain personally liable for punitive damages is preserved.

We hold, therefore, that, notwithstanding the General Assembly's failure to specifically preserve a tortfeasor's liability for punitive damages after its general abolition of tort liability, plaintiffs may still claim punitive damages under the tortfeasor's continued liability for nonreimbursable tort fines provided for by section 301(b) of the act. Cf. Tchimayan v. Toscano, supra (even though damages for loss of consortium are not specifically preserved under the No-fault Act, they may be recovered under noneconomic detriment); Cannon v. Hohmann, 10 D. & C. 3d 765 (1979) (following Tchimayan).

### ORDER

And now, January 18, 1980, defendant's motions for partial summary judgments are denied.